151091 MCM Portfolio v. Hewlett-Packard v. Hewlett-Packard May it please the Court. Edward Teller representing MCM Portfolio LLC. The first matter I'd like to bring to this Court's attention is something new that we just realized that we have to bring to the Court's attention. Because this case involves the Article III constitutional jurisdiction of the Board to actually render a decision on the merits or any other decision, under controlling Supreme Court authority and under this Court's case law, the constitutional issue must be decided first as a conditioned precedent for this Court to actually consider and decide any other issue in this case. What constitutional issue? The jury trial issue? No, it's a matter of constitutional jurisdiction under Article III. But you didn't raise that issue in your brief, did you? No, but this is a new issue that I frankly admit it's a new issue, but I'd like to bring it to the Court's attention. Is this something that is just newly discovered? It's not based on anything that has occurred in the legal scheme? No, it's just something that I realized recently. It's my fault for not bringing it to this Court's attention earlier, but it's a requirement of the Supreme Court and it's a requirement of this Court's jurisprudence. It's like a standing issue. It's something you can't waive. So moving on, do you have any questions on this? I'm not sure what you're talking about. That Myosin case you're talking about, isn't that the CDA case? It's not really a patent case, but it has to do with standing. You're relying on it for the theory that it's jurisdictional. We have to decide it even though you didn't raise it. Well, we did raise the whole point of the constitutional argument that there is no constitutional... But you didn't raise the Article III issue. You just admitted that. Oh, no, this particular aspect of the Article III issue. The whole point of the constitutional issue is the Article III issue. What aspect of Myosin are you relying on? Well, it's the fact that the Court must first find that there is constitutional jurisdiction if that issue is raised. Constitutional jurisdiction where? Here? No, for the board, for the director. You're arguing it's a violation of Article III to put the validity issue before the board. You didn't raise that issue in your brief, but you say it's jurisdictional and we have to address it anyway. Correct? We did raise the constitutional issue. Yes? We raised the constitutional issue. The jury trial issue. The jury trial issue is part of the Article III issue. The Article III issue is our main avenue of... I'm trying to help you clarify what you're arguing and you're resisting it. Okay. The Article III issue is whether the board has the constitutional authority to decide an IPR and whether issues like revocation of patents has to be tried in Article III court as a matter... You didn't raise that issue before, but you're saying we have to address it anyway because it's jurisdictional. You did raise it before, but what I'm trying to say now is that it's a little bit different aspect is that you have to decide this issue, the Article III issue, which we did present first before you can decide other issues. That's the only nuance... What is the issue that you raised at the beginning of your argument which you said you didn't raise in your brief? Oh, it's the precedent. You have to do this one first. Let me see if I get it. All you're saying is we can't decide this based just upon the board's obviousness findings. We actually have to rule on the constitutional issue. That's exactly correct. That's all I'm saying. Now, turning to the constitutional issue, the board did not actually decide that issue. They just decided they were bound by this court's decisions and Pat Lex enjoyed technologies. This panel bound by those decisions as well? That's my next point. This court has the power under Troy v. Sampson to decide a prior panel decision is overruled by subsequent controlling authority. I would like to then turn to what I believe is subsequent controlling authority. First, I'd like to talk about this court's holding in Lockwood. Lockwood was a holding of this court that patent validity declaratory judgment actions had a right to a trial by jury. Is Lockwood an en banc case? That's a good point. It's not. Then how could it possibly overturn prior precedent? Isn't the rule that the earliest precedent is binding even if subsequent precedent is inconsistent? Then the answer is yes. It was vacated after the Supreme Court took certiorari when it was mooted. But this court has consistently followed Lockwood in subsequent decisions, including the most recent case of technology licensing. It's not en banc, I agree, but if Pat Lex controls and Lockwood is not, then there is no right to a jury trial for patent validity. Three judges in this court in arguing for en banc in Lockwood argued that very point that if there is a right to a jury trial for validity, that that necessarily overrules Pat Lex. Because the administrative replication of a patent is inconsistent for validity, is inconsistent with the right of the patent owner to have a jury trial on that issue. Suppose we were told that there is no jury trial right in an Article III court on a validity issue. Just hypothetical. Would there be anything wrong with giving that issue to the PTO? Yes. That's the next case I want to talk about. This is the recent Supreme Court case of Stern v. Marshall, decided in 2011, which, among other things, reaffirmed that the prior authority that came out of Murray's lessee consistently held in Crawl v. Benson, Northern Pipeline, Grand Venetia area, and Stern v. Marshall. Reaffirmed that any case that was actually litigated in the common law courts, that includes the common law courts, the courts of equity, are inherently Article III type cases and cannot be removed by Congress and given to an administrative tribunal for decision. So the question then becomes, is an IPR which actually revokes a patent for invalidity, is that like any action that actually took place at common law? Because if it is under Stern v. Marshall, then that cannot be removed by Congress from the courts to the patent office. And it turns out that the common law did have a right to revoke a patent for invalidity, and that action was known as the action of scurifacius. The action was filed in the common law side of the chancery. It had a right to a jury trial. It is a legal action. The Supreme Court in Maury v. Whitney recognized, discussed the actions under scurifacius, identified three grounds for repeal of a patent, replication of a patent, double patenting, fraud, and invalidity. The recent article by Lemley thoroughly discussed the scurifacius actions filed in the law side of chancery, right to a jury trial. The John Paxton-Norman treatise we gave you says the same thing. And I'd like to bring this court's attention to the Supreme Court case of Ex parte Wood v. Brindge, where the Supreme Court held that in actions, statutory actions, to revoke a patent for invalidity, there was a right to a jury trial. That was a holding. And why? Because the right to revoke a patent for invalidity was like the common law writ, scurifacius. That was the holding of the court. And they cited in that case, the Supreme Court cited in that case, the Seventh Amendment. So part of the basis of that holding of the Supreme Court was the Seventh Amendment. So, reiterating, unassertive, if a case was actually litigated in common law type of case, it must continue to be litigated in the courts. It cannot be reassigned to administrative trial and funeral by Congress. That would be a constitutional violation of the structure of our government under Article 3. And I think it's clear that an IPR, which invalidates, revokes, in whole or in part, as a result of invalidity, patentability if you want to call it, but invalidity is what the government calls it, is exactly like the writ scurifacius in common law. And it has a right to a jury trial. And under scurifacius, it must be tried in an Article 3 court. I would like to reserve a balance of my time in case the correspondents talk of anything else. On behalf of Sheila Packard, may it please the Court, HP is sharing its time with the government and we have divided up some of the issues. But there's three points I'd like to address today. First is something that Consul Parencium didn't address, and that's the obviousness decision of the Board. The issue here is whether it was supported by substantial evidence, and it is. Second is the privity issue and whether HP's petition for an IPR was barred under Section 315B. Was it a time bar? The issue here, there are several sub-issues. One, is this issue even appealable? If it is appealable, then on the merits, was it correct? And is it subject to mandamus? And third, the question, the third question is the constitutionality of the IPR statute. So turning first to the obviousness issue. Why don't you focus a little more on the constitutionality question? On the constitutionality question, the government is going to take the lead on that issue. We are aligned with the government. As far as Hewlett-Packard's position, we think it's fully addressed in the brief. We think IPRs are similar to re-examinations. And the issues that have been raised by MCM were decided by this Court in the Patlick's case and in the Joy Technology case in the context of re-examinations. And those decisions apply equally to IPRs. And MCM has not shown... Is IPR different at all from re-examinations? Yes, it is different. It's not identical, but the same policy reasons behind the IPR, behind re-examinations, and looking at public rights and patents, and the government issuing patents, and the government by Congress has the authority to correct mistakes in patents that are issued. Those are all the same reasonings that apply to IPR. And that's why it's our view that the Patlick's and Joy Technology decisions are binding and controlling on IPRs. You may not know the answer to this question, but at common law in 1787, was there a procedure in the patent office in Great Britain that allowed for something like re-examination? I don't know the answer to that. Perhaps my government consul knows that. Since they're laughing, they probably know. Yes, we divided up the issues to conserve the time allotted. If the panel does not have questions on the obviousness issue, I can go through it quickly, or I can address the privity issue. Because to some extent, the obviousness issue is unique to HP, and so are aspects of the privity determination, or the decision under Section 315B. Well, let me ask you about the privity issue, because why isn't, I mean, we've got two cases out now. One is Clozo, one is Versada, and they reach a somewhat different conclusion based on whether or not we're talking about a CDM or not. So why does this case, when we're dealing with the one-year and the privity issue, not fall on the same line as Clozo did with respect to CDMs, and therefore allow for review in connection with the final decision? HP's view is that the time bar decision under 315B is not appealable under Clozo. It's a patentability decision. I'm sorry, it's not a patentability decision, and patentability decisions are appealable as part of the appeal right of the final decision from the board. But in Versada, we said the question of whether or not this is a CDM is a matter that's reviewable on appeal, because it's sort of like a jurisdictional question, kind of sort of a threshold issue, and why doesn't the time bar activity issue fall underneath that umbrella? Well, this is an issue that the government is also going to address, but for HP, we see the issue of the time bar as more akin to the issue in Clozo, and not the CDM issue in Versada. The sections of the statute for the inter-parties review, section 314 in the appeal, or the no appeal of the institution decision, is written very broadly, and it's written broad enough to cover the time bar decision under section 315B. And we think that the court's reasoning in Clozo applies to this issue. And the other issue that's been raised is whether the time bar issue is appealable or reviewable via a mandamus route. That decision's already been decided in this particular case, because MCM filed a petition for mandamus on this issue when the board instituted the IPR. And there's nothing here, nothing since then, that MCM has shown that establishes that it has the right to mandamus. There's no evidence that the board acted outside its authority and met the strict standard for mandamus. Counsel for MCM raised the case of the Menison Company case versus McHugh, and that case allows this court not to reach the appealability of the 315 time bar, but rather to go and look at the merits of the privity issue and decided on the merits of what the board found. And the board found, with regard to privity, that MCM had not shown sufficient evidence to show that HP and Penn Digital were in privity together, such that an IPR would be barred. If the panel has any questions about the merits of the privity decision, I'm happy to address that. Otherwise, I could turn over the podium to Governor. Yeah, why don't we do that, and we'll allot your remaining time to the Governor. Thank you. May it please the Court, Will Haffman, on behalf of the Director of PTO. The Director intervened to address two issues of institutional importance to PTO implicated by this appeal. I may turn first to the question, briefly, of reviewability in response to Chief Judge Prost's question as to the bearing of Fursada on this case. As the Court is probably aware, the government believes that Fursada was incorrectly decided with regard to this case. With respect to the question of reviewability, and we have petitioned this Court for a hearing on bank of that question. But even under the logic of Fursada, Fursada plainly does not apply in this case. And that's because, A, Fursada took care to note that that was a case dealing with covered business method patents, rather than with IPR, whereas COSA was a case about IPR. Second, that was a case, as Chief Judge Prost noted, about whether or not the question of whether a patent was, in fact, a covered business method patent, was somehow a question that bared on the Board's final written decision. And the Court in Fursada made clear that this was an appeal from the Board's final written decision, and that an appeal from the institution decision would be barred under the logic of COSA. And this Court, in the St. Jude case, and more recently in the GTNX case, has made clear that the question whether a petition is time-barred under Section 315B is a question that goes only to institution, as opposed to the final written decision. St. Jude was a case in which the Board declined to institute inter partes review under 315B, and the petitioner in that case appealed to this Court and argued that that made many of the same arguments that MCM makes here, and this Court rejected that argument, and it made clear that the time-bar of Section 315B bears on the institution question, and that's plain from the text of 315B itself, which says that an inter partes review, quote, may not be instituted. If it is filed more than a year after, the petitioner, or someone in privity with the petitioner, was sued for patent infringement. So even under the logic of Fursada, this case is governed by COSA. And if there are no further questions, I'll proceed to the constitutional question. My colleague from MCM made a number of arguments with respect to the constitutional question. First, this Court has already decided this issue in Pallex and in Joy Technologies. This side is about re-examination. That's right, Your Honor. Is re-examination the same as IPR? It's not the same, but it's the same for purposes of the Article III analysis. And how so? Well, as this Court framed it in the Pallex case, the question is whether or not PTO, under the authority assigned to it by Congress, properly granted the patent in the first instance. And that's the exact same question that is at issue with respect to inter partes review. That is whether or not the PTO, acting under its constitutional authority, was right to grant the patent in the first instance. And the fact that there are different procedures attendant to an IPR rather than to an ex parte re-examination does not make a difference. And I don't actually understand MCM to be making an argument that those different procedures make a difference. Rather, MCM argues that Pallex was sub salientio, overruled by some of this Court's subsequent precedents and from Stern. But nothing could be further from the case. Stern, in fact, strongly supports the government's position with respect to the Article III question here. How is that right? I mean, how can a patent right be exclusively a public right under Stern if it involves the liability of one individual to another? Well, at this point... And your view must be, if Stern doesn't, that this comes within the public right articulated in Stern. And that's because, as the Stern Court itself put it, although the claim in Stern was deemed to be a claim that must be adjudicated in an Article III court, that was a claim that derived solely from common law. It was a state law claim for tortious interference that did not originate from any statutory scheme and that was not governed by an expert government agency. And the Court in Stern made clear that if the claim derives from a federal regulatory scheme, or if resolution of the claim by an expert government agency is deemed essential to a limited regulatory objective within that agency's authority, then that is a public right. Here, a patent is solely a creature of statute. Yeah, but, I mean, Stern, it's not all that clear. And we have a very odd situation here in which invalidity questions are adjudicated both in the courts and before the PTO. And the argument is, based on the cases following Lockwood, that there's a jury trial right with respect to the invalidity issue when it's adjudicated in an Article III court, but that it's okay to remove the issue entirely from the Article III court and put it into the administrative agency. That is not a situation, so far as I know, that has come up before in the public rights context. So it is a little different. And I think, for example, if we had a situation in which the district court were statutorily authorized to refer the invalidity issue in the context of an infringement suit for adjudication of the agency, there'd be a real question as to whether that was permissible, right? I don't know, Your Honor. I think that your question raised a number of points. First, Congress did not take away from Article III courts' jurisdiction to hear invalidity claims. It provided parties with an alternative, less expensive, less time-consuming process for determining the question, the very same question that was at issue in Patlax and Joint Technologies, and that is whether the patent office was correct in the first instance to issue the patent. And under the Supreme Court's public rights doctrine, a patent plainly falls under the ambit of a public right, whichever way the court characterizes it. A patent is a creature of statute. It is overseen by an expert government agency tasked by Congress with administering the patent scheme. And as the Supreme Court has emphasized, a patent, by its very nature, is affected with a public interest, and that's because it's a monopoly that operates against the public at large. And, Judge Sykes, you were referring earlier to the Seventh Amendment question, but I think that it's important to note that the Seventh Amendment and Article III present two distinct inquiries. In the first question, when Congress decides to send a right into an administrative agency for adjudication, the first question, the only relevant question, is whether or not that right is a public right that Congress may authorize to be adjudicated in a non-Article III court. Now, if Congress decides to send a statutory right into a federal court, that raises the Seventh Amendment question. And the Supreme Court has decided a number of cases, including the Curtis v. Lothar case and the Purnell case from the 70s, in which the court was dealing with a statutory scheme that Congress sent to be adjudicated in Article III courts. And the Supreme Court found that a jury right attached in those cases, but in both cases made clear that nothing would have prevented Congress from sending those statutory rights to be adjudicated in a non-Article III forum in the first instance. So even if this court thinks that a jury trial right attaches in the validity case, and even if this court believes that validity and the inter partes reprocesses implicate the same kinds of questions, that is not dispositive, that simply does not bear on the question whether Congress may send a right to be adjudicated in an agency in the first instance. And there's no support for the contention, which is raised by amicus, that somehow the different procedures attendant to inter partes review and ex parte reexamination can distinguish those cases. The Supreme Court, and no court to my knowledge, has ever suggested that different procedures in an administrative process bear on the question of whether or not Congress may designate a right for adjudication in an administrative scheme. And as we note in our brief, it would be a very peculiar rule of constitutional law if that were the rule, because as far as I understand the argument, it means that the more process parties have in an administrative process, the less constitutional that process would be, and that simply can't be correct. I see that I'm well over my time. If the court has any further questions, I'd be happy to answer them. I would like to first address the issue of whether a patent, because it's statutorily granted by Congress, gives Congress plenary power over that newly created statutory right, making it a public right because it's a public interest or whatever theory the government has. That automatically makes it a public right. I mean there's no question that Congress can allocate to an administrative agency the power to determine whether a patent should be granted in the first place. Yes, we agree with that because that's consistent. And to rule on the validity question as part of that initial examination, right? No question. So why can't it essentially provide for reconsideration of that issue and place the reconsideration issue in the administrative agency which granted the patent in the first place? Because the Supreme Court has been consistent on this issue. Once the patent or any right granted by the agency under the law has passed from the agency, it has no authority to reconsider the validity of that action. The validity of that action is exclusively a matter for the courts. The first Supreme Court case to actually decide this issue is Marbury v. Madison. That was the exact issue before the Supreme Court on the mandamus petition there. They decided that the government had no authority to revoke the appointments. There was a change of presidency. The new president wanted to revoke the appointments of the prior president. The Supreme Court said no. The validity of the appointments was exclusively a matter for the courts. So this is not a new issue. This is an old issue. The Supreme Court has been consistent that if a right has issued from a right, not something else, but a right has issued from an agency, from the government, there's a property right in that and the only institution that can revoke that right is an Article III court. Now, of course, if the patent is a public right, there's a consequence. If a patent is a public right, there is no right to a trial in an Article III court at all. There's no right of anybody to say I have an Article III jurisdictional right because public rights and Article III jurisdictional rights are inconsistent. They're mutually exclusive. Similarly, there's no right to a jury trial with a public right because jury trials only stem to things that actually were legal actions in common law. And if it's a legal action in common law, the court has consistently ruled that they must be trialed in an Article III court. Therefore, there's no right to a jury trial if a patent is a public right. I would like to bring this court's attention that copyrights, trademarks, and patents are all granted by statute. The Supreme Court has held in three different cases recently that each of these rights has a right to a trial by jury in actions in court. Derry Queen decided that trademark rights have a right to a trial by jury in court. Feltner decided that copyrights have a right to a trial by jury in court. Markman decided that patents have a right to a trial by jury in court. Three Supreme Court cases. They are all going to be overruled if somehow, just by merely the government granting the right, having the power to grant the right, makes it a public right. All those cases are not properly decided. They're all overruled. The Supreme Court could overrule all those cases. I doubt it. I severely doubt it. There's something inconsistent with the government's argument in Patlex with controlling Supreme Court authority, and it's quite clear. I'd like to briefly turn to the merits argument and bring this court's attention to A220 in the appendix. Could you please turn to that page, A220 in the appendix. It's a diagram. This diagram was not in their petition. This diagram was in HP's reply brief. This is the sole evidence and argument that Takuchi teaches that Kobayashi could be reconstructed into a controller chip. We objected in our argument that that was an improper argument made for the first time in the reply brief. We cited the rule 42.22. I'm concerned it's the same way that you're raising the merits without having addressed it in your opening argument. We did raise it in our briefs. So we did raise it, and at this point I get out here again that that's when we were saying that that argument was not presented in the petition and there was no evidence in the petition. I'm showing you where the board's idea, the reconstructed Kobayashi came from. It came from the HP reply brief. We objected below and we objected here. We renewed that objection. That's not proper evidence. It's not a proper argument. Briefly on the 315B issue, I'd like to refer this court's attention to the GTNX case where the board had held that the may not institute language is jurisdictional. If it's jurisdictional, and we believe it is jurisdictional, it's always appealable under Supreme Court case law. I would like to specifically refer to the Hinkler case, which said that denials of institutions are generally not appealable, but when an agency does institute the jurisdiction of that agency to the jurisdiction of that agency is always appealable. So there's no question that if the shall not institute language is jurisdictional and is always appealable in our mandamus, the government argued that the 315B issue could be raised on appeal. That was the basic argument they had made to this court for the reason to deny the petition. This court said that we had the opportunity to raise the petition on appeal. So they denied the mandamus without prejudice to our raising it on appeal. Based upon the argument of the government that we could, they said that at the time they must have believed that there was a reasonable construction that you could raise the 315B issue on appeal. There was nothing in the statutory framework of construction that was inconsistent with that argument at that time. Now in our order denying the mandamus, what did our order say? It said we deny it without prejudice to MCM attempting to raise the issue on appeal from the final written decision. So this court believed that we could. The argument of the government in denying the mandamus is that we could, we did, and now they changed their position and said no. But the counter to that is it's jurisdictional. And because it's jurisdictional, it must be appealable under Supreme Court case law. Is there any further questions? Thank you. We thank our counsel and the case is submitted. That concludes our proceedings for this morning. All rise. The Honorable Court is adjourned from day to day. Thank you.